UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL PETERSON, ) | Case No. C06-626-TSZ-JPD |
| Plaintiff, ) | |
| v. ) | REPORT AND RECOMMENDATION |
| JO ANNE B. BARNHART, Commissioner, ) Social Security Administration, ) | |
| Defendant. ) | |

Plaintiff Michael Peterson appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), which denied plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act after a hearing before an administrative law judge ("ALJ"). The parties agree that the case should be reversed and remanded; the sole issue is whether this Court should remand for further administrative proceedings or for a finding of disability and the immediate award of benefits. For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for an award of benefits.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff is a fifty-three year old divorced man with a high school education and credits toward an associate of art's degree. AR at 291. He has previously worked as a construction

laborer, a combination welder, a porter,[1] a factory worker, and a janitor. AR at 60-63, 70, 156, 291. He was last gainfully employed in January 2004, and currently receives public assistant benefits. AR at 104, 277. Plaintiff is homeless, but often finds sleeping quarters in various Seattle shelters through the assistance of the Lazarus Day Center. AR at 336-37.

Plaintiff has a criminal history, having been convicted of assault, robbery, theft, and domestic violence crimes, among other offenses. AR at 91-146. However, the ALJ made no finding that this history impacted plaintiff's credibility or otherwise played a role in her decision. AR at 297.

On March 22, 2004, plaintiff applied for DIB and SSI benefits alleging an onset date of September 20, 2003. AR at 45, 275, 319.[2] Plaintiff asserts that severe depression, violent disposition, bipolar disorder, post-traumatic stress disorder, antisocial personality disorder and diabetes have kept him from obtaining and maintaining employment of any kind. AR at 16; Dkt. No. 9.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 16-21, 279-82. On April 26, 2005, a disability hearing was held before the ALJ, who concluded that plaintiff was not disabled and denied benefits based on her finding that plaintiff could perform his past relevant work. AR at 297. Plaintiff's administrative appeal of the ALJ's decision was denied by the SSA Appeals Council, AR at 5-8, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).

On May 4, 2006, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 1.

---

[1] The plaintiff appears to have held this position while in prison. It involved cleaning of showers five days a week for thirty-five cents an hour. AR at 327-28, 352.

[2] Plaintiff's original onset date of March 19, 2000, was amended at his disability hearing. AR at 319.

REPORT AND RECOMMENDATION
PAGE - 2

## II.  JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.  STANDARD OF REVIEW

This Court, pursuant to 42 U.S.C. § 405(g), may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, settling conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to meticulously examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence of record is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV.  EVALUATING DISABILITY

As the claimant, Mr. Peterson bears the burden of proving that he is disabled within the meaning of the Social Security Act ("the Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful

activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof for steps one to four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled or not disabled at any step in the sequence, the inquiry ends without need to consider subsequent steps.

Step one determines whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[3] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether that impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals a listing for the twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. *Id.* If the claimant is able to perform his

---

[3] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

past relevant work, he is not disabled; if the opposite is true, the burden shifts to the Commissioner at step five to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the Commissioner finds the claimant is unable to perform other work, the claimant is disabled and benefits may be awarded.

## V.  DECISION BELOW

On August 4, 2005, the ALJ issued a decision denying plaintiff's request for benefits, which found:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through March 31, 2006.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's bipolar disorder, depression, posttraumatic stress disorder, antisocial personality disorder, and polysubstance abuse in early remission are considered "severe" impairments based on the requirements in the Regulations. His diabetes is not a "severe" impairment (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The claimant is credible overall. He is not always compliant with recommended medical treatment.

6. The claimant has no exertional limitations. He should not work with the general public and should have minimal contact with coworkers and supervisors comprising no more than 30 percent of the workday.

7. The claimant's past relevant work as a janitor, as the job is generally performed in the national economy, does not require the performance of work-related activities precluded by his residual functional capacity (20 C.F.R. §§ 404.1565 and 416.965).

8. The claimant's medically determinable bipolar disorder, depression, posttraumatic stress disorder, antisocial personality disorder, and polysubstance abuse in early remission do not prevent the claimant from performing his past relevant work as a janitor.

9. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

AR at 34-35.

## VI.  ISSUE ON APPEAL

The parties agree that the ALJ's decision below was deficient and should be reversed. More specifically, the Commissioner concedes that the ALJ erred in her evaluation of the medical opinion evidence, erred in her RFC assessment and, as a result, erred in her ultimate step four finding, but argues that the record does not clearly require a finding of disability. Plaintiff's opening brief appears to raise four primary assertions of error: (1) whether the ALJ provided sufficient reasons for rejecting the opinions of examining psychiatrist Dr. Carla Hellekson and examining psychologist Dr. Phyllis Sanchez; (2) whether the ALJ's mental RFC assessment is free of legal error and supported by substantial evidence; (3) whether the Court should remand for further consideration the evidence presented to the Appeals Council by psychiatrist Dr. James Hopfenbeck; and (4) whether the ALJ's determination that the claimant has past relevant work as a janitor is free of legal error and supported by substantial evidence. Dkt. No. 9. The Commissioner does not contest these errors, but rather, urges that they be corrected upon remand. Dkt. No. 14. However, the parties disagree on the proper remedy—i.e., whether the case should be remanded for further administrative proceedings or for an immediate award of benefits.

## VII.  DISCUSSION

If this Court determines that the ALJ committed reversible error, it has discretion to remand for further proceedings or to award benefits. *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision, *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989), and where the Commissioner is in a better position to evaluate the evidence. *Marcia v. Sullivan*,

900 F.2d 172, 176 (9th Cir. 1990). Remand for an award of benefits is preferred where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey*, 298 F.3d. at 1076. More specifically, erroneously rejected evidence should be credited and an immediate award of benefits directed where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [certain pertinent] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). The Court, however, retains the flexibility to remand for further administrative proceedings and may do so when substantial questions remain unresolved. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003).

.    A.    <u>The ALJ Failed to Provide Legally Sufficient Reasons for Rejecting the Medical Opinion Evidence of Dr. Hellekson and Dr. Sanchez</u>

Relevant medical evaluations of the following three examining physicians were before the ALJ at the time of plaintiff's April 26, 2005, disability hearing: Dr. Carla Hellekson (AR at 149-52); Dr. J. Michael Gallagher (AR at 204-07); and Dr. Phyllis Sanchez (AR at 265-71). A fourth report, produced by Dr. James Hopfenbeck, was submitted to the Appeals Council shortly after the ALJ issued her decision.[4]

Dr. Hellekson examined the plaintiff on January 30, 2004, and reported her evaluation on a Psychological/Psychiatric Evaluation form provided by the Department of Social and Health Services (DSHS). Dr. Hellekson diagnosed plaintiff with post-traumatic stress disorder (PTSD), antisocial personality disorder, polysubstance dependence (clean as of September 2000), and adult antisocial behavior. AR at 150. While Dr. Hellekson's functional limitations

---

[4] Because Dr. Hopfenbeck's evaluation was performed and received after the disability hearing and just prior to the ALJ's decision of August 4, 2005, the ALJ did not have an opportunity to consider it.

REPORT AND RECOMMENDATION
PAGE - 7

assessment of plaintiff reflected no cognitive difficulties,[5] she found that plaintiff had the highest degree of limitation in nearly all areas of social functioning. AR at 151. Specifically, Dr. Hellekson found plaintiff to be severely limited in his ability to (1) relate appropriately to coworkers and supervisors; (2) interact appropriately in public contacts; (3) respond appropriately to and tolerate the pressures and expectations of a normal work setting; and (4) control his physical or motor movements and maintain appropriate behavior. AR at 151. Dr. Hellekson opined that these conditions would last at least two years, but could be permanent, because her Axis II diagnoses were "lifelong [and] not treatable by traditional mental health modalities." AR at 152. At plaintiff's disability hearing, the Vocational Expert (VE) testified that an individual who suffered from the above-mentioned functional impairments would not be able to maintain competitive employment. AR at 355, 357.

Plaintiff was next evaluated by Dr. Gallagher on May 27, 2004, by referral of the SSA. Dr. Gallagher's report contains a discussion of plaintiff's mental health history, which appears to come solely from statements made by plaintiff at the evaluation. AR at 204-05. Dr. Gallagher's diagnoses included ruling out schizoaffective versus bipolar disorder, polysubstance abuse and/or dependence, and alcohol abuse (possibly dependence). AR at 207. Plaintiff's Global Assessment of Functioning (GAF) level was reported at 55-60.[6] Notably,

---

[5] That is, Dr. Hellekson found no limitations in plaintiff's ability to understand, remember, and follow simple and complex instructions, to learn new tasks, exercise judgment and make decisions, and perform routine tasks. AR at 151.

[6] The GAF is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (Text. Rev., 4th ed. 2000). A GAF score of 51-60 indicates "moderate symptoms," such as a flat affect, occasional panic attacks, or "moderate difficulty in social or occupational functioning." *Id.* at 34. A GAF score of 41-50 indicates "[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job. *Id.* A score of 25 means that the individual is experiencing a "serious impairment in communication or judgment . . . or [an] inability to function in almost all areas." *Id.*

01 Dr. Gallagher's report, unlike that of Drs. Hellekson and Sanchez, does not assign functional
02 limitations related to plaintiff's ability to understand, carry out and remember instructions, or
03 respond to supervision, coworkers, and work pressures.

04 On March 3, 2005, plaintiff was evaluated by Dr. Sanchez. At this meeting, plaintiff
05 complained of depression, diabetes, anger, polysubstance abuse, and schizophrenia. AR at
06 265. Dr. Sanchez's findings appear on a form very similar to that used by Dr. Hellekson,[7]
07 and while her cognitive limitations were dissimilar, her social functioning limitations were
08 almost identical to Dr. Hellekson's. Dr. Sanchez found that plaintiff was severely limited in his
09 ability to relate appropriately to coworkers and supervisors, interact appropriately in public
10 contacts, and to control his physical or motor movements and maintain appropriate behavior,
11 and found marked restrictions in his ability to respond appropriately to and tolerate the
12 pressures and expectations of a normal work setting. AR at 266. Like Dr. Hellekson, Dr.
13 Sanchez opined that plaintiff's impairments were likely incurable. AR at 267. Again, at
14 plaintiff's disability hearing, the VE testified that an individual who suffered from such
15 impairments would not be able to maintain competitive employment. AR at 355, 357.

16 Shortly after plaintiff's disability hearing, plaintiff was evaluated by Dr. Hopfenbeck,
17 who reviewed the evaluations of Drs. Hellekson and Sanchez, performed an interview and
18 mental status exam, authored a lengthy narrative report assessing plaintiff's impairments and
19 limitations, and completed a medical source statement which rated plaintiff's work-related
20 mental and functional limitations. AR at 299-309. Dr. Hopfenbeck diagnosed plaintiff with
21 chronic and severe PTSD, ruled out bipolar disorder (mixed), polysubstance dependence (five
22 year remission), and severe antisocial personality disorder. AR at 304. He reported a GAF
23 level of 38. AR at 304. Dr. Hopfenbeck summarized as follows:

---

[7] Dr. Sanchez recorded her mental health opinions on a DSHS form with a mini-mental status examination (MMSE) attached. AR at 265-69. For unexplained reasons, the administrative record does not include page two of the DSHS form, which would typically list all relevant symptoms and diagnoses.

REPORT AND RECOMMENDATION
PAGE - 9

> Mr. Peterson presents a complicated history with a persistent and pervasive experience of antisocial personality disorder which has led to frequent fights, the commission of many crimes, and substantial periods of time incarcerated with threats and violence toward others. . . .
>
> He has a lifelong history of being avoidant and not being able to work well in social systems.  Though he could clearly benefit from participation in a community mental health center in ways that could directly help him such as the achievement of housing as well as the stabilization of his anxiety problems, he has not been able to participate in any intake or ongoing care and this is not due to any cognitive impairments.  I agree with Drs. Sanchez and Hellekson that the claimant has very little prospect of achievement of gainful employment, both due to his severe history of traumatic stress disorder as well as his antisocial personality which is persistent, pervasive and almost certainly permanent.  On the job he would almost certainly become violent and be unable to interact appropriately with coworkers, the public, and especially with supervisors.

AR at 304-05.

Attached to Dr. Hopfenbeck's report was a medical source statement which rated plaintiff's work-related mental and functional limitations.  AR at 306-09.  Among various mild and moderate limitations, Dr. Hopfenbeck found that plaintiff *could not* (1) perform activities within a schedule or maintain regular and punctual attendance; (2) sustain an ordinary routine without special supervision; (3) work in coordination with or in proximity to others without being unduly distracted by them; (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable amount and length of rest periods; (5) interact appropriately with the general public; (6) accept instructions and respond appropriately to criticism from supervisors; (7) get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; and (8) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness.  AR at 307.

In reaching her decision, the ALJ assigned greater weight to the opinions of Dr. Gallagher than that of Drs. Hellekson and Sanchez.  AR at 295.  This conclusion was reached despite the fact that Dr. Gallagher was not provided with any medical records to review, despite the fact that his conclusions differed markedly from every other examining physician,

REPORT AND RECOMMENDATION
PAGE - 10

and despite the fact that Dr. Gallagher, unlike Drs. Hellekson and Sanchez, failed to include an assessment of plaintiff's functional limitations as required by the Social Security Act. *See* 20 C.F.R. § 404.1519n(c)(6) ("A complete consultative examination . . . *should include* the following elements . . . in cases of mental impairment(s)[:] the opinion of the medical source about [the claimant's] ability to understand, to carry out and remember instructions, and to respond appropriately to supervision, coworkers and work pressures in a work setting.") (emphasis added). Despite these deficiencies, the ALJ determined that Dr. Gallagher's medical opinions were entitled to greater weight because the DSHS mental health forms utilized by Drs. Hellekson and Sanchez were "cryptic . . . cursory checklist forms," making the physicians' opinions "obviously not as thorough." AR at 296. The ALJ also discredited the conclusions of Drs. Hellekson and Sanchez because they "relied on the claimant's self report to establish his background," despite the fact that the ALJ herself later noted that Dr. Gallagher "was not provided with any medical records to review," but also had to rely on the claimant's response to mental status inquiries, and despite the fact that she found plaintiff to be *credible*. AR at 295-96, 297.

The parties agree, and the Court finds, that the ALJ's rejection of Dr. Hellekson and Dr. Sanchez's opinions in favor of Dr. Gallagher's opinions constitutes reversible error. *See* Dkt. No. 9 at 13-16 (Plaintiff's Brief), *and* Dkt. No. 14 at 8 (Commissioner's Brief). If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). Such reasons must at all times be supported by substantial evidence. *Id.* Ordinarily, when "the ALJ fail[s] to provide adequate reasons for rejecting the opinion of [an] examining physician, we credit that opinion as a matter of law." *Edlund v. Massanari*, 253 F.3d 1152, 1160 (9th Cir. 2001) (quoting *Lester*, 81 F.3d at 834).

REPORT AND RECOMMENDATION
PAGE - 11

In this case, the ALJ's rejection of Dr. Hellekson and Dr. Sanchez's opinions was neither specific nor legitimate. Nor was it supported by substantial evidence. The DSHS forms utilized by Drs. Hellekson and Sanchez may appear "cryptic" and uninformative to the layperson but such forms are concrete, meaningful, and highly probative in the social security context. Moreover, neither the ALJ nor the VE expressed any failure to comprehend the information contained in those forms. *See* 20 C.F.R. § 404.1512(e)(1) ("When the evidence [the Commissioner] receive[s] from [the claimant's] treating physician or psychologist or other medical source is inadequate for [the Commissioner] to determine whether [the claimant is] disabled," it will "recontact [that] medical source"). The evidence of record does not support a conclusion that Dr. Gallagher's opinion was more thorough than that of Dr. Hellekson or Dr. Sanchez. Accordingly, the first remand-for-benefits requirement under *Smolen* is satisfied. *Smolen*, 80 F.3d at 1291 (noting that erroneously rejected evidence should be credited and the case "remanded for an award of benefits where [, in addition to other factors,] the ALJ has failed to provide legally sufficient reasons for rejecting such evidence").[8]

    B.    <u>No Outstanding Issues Must be Resolved Before a Disability Determination Can be Made</u>

---

[8] While the Commissioner ostensibly concedes this prong of the remand analysis, it vigorously disputes that the medical opinions erroneously rejected should be automatically credited by the ALJ as a result. *See* Dkt. No. 14 at 9 (arguing that Ninth Circuit law "does not require the ALJ to credit [improperly rejected] medical source opinions"). In this regard, the Commissioner is partially correct. Although *Benecke v. Barnhart*, 379 F.3d 587 (9th Cir. 2004), indicated that the "credit as true" doctrine is mandatory in nature, *see id.* at 593-94, other Ninth Circuit decisions reveal that the decision to award benefits remains discretionary, particularly where outstanding credibility determinations exist. *See Connett*, 340 F.3d at 876 (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *Nguyen v. Chater*, 100 F.3d 1462, 1466-67 (9th Cir.1996); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995)). *Connett,* noted inconsistent lines of Ninth Circuit decisions, one finding the doctrine mandatory and one discretionary. *Id.* The court ultimately determined, however, that the only consistent way to read the decisions was to conclude that, mandatory language notwithstanding, the court retains discretion to remand for further determinations. *Id.* That discretion, however, is necessarily at its lowest ebb where no outstanding issues remain before a disability determination can be made—a question this Court addresses next.

Because the ALJ failed to provide legally sufficient reasons for rejecting the opinions of Dr. Hellekson and Dr. Sanchez, the Court must assess whether there are any "outstanding issues that must be resolved before a determination of disability can be made." *McCartey*, 298 F.3d at 1076-77. Plaintiff answers that question in the negative and argues that benefits should be awarded on remand as a result. Dkt. No. 9 at 22. The Commissioner disagrees, and insists that upon remand, the ALJ must reevaluate the medical source opinions of record, including the new report of Dr. Hopfenbeck

The Commissioner is undoubtedly correct in stating that "[i]n most remand cases, the court reverses the Commissioner's decision and then remands the case for further administrative proceedings in compliance with the court's order." Dkt. No. 14 at 9. However, this course is not appropriate in this case. While it is true that the ALJ did not have the opportunity to consider the opinions of Dr. Hopfenbeck, this evidence is not material because it could only strengthen, not diminish, the plaintiff's entitlement to benefits. *Cf. Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001). Furthermore, the typical red flags in remand cases—error in evaluating the claimant's subjective complaints and overall credibility—are noticeably absent here. *See Connett*, 340 F.3d at 876 (collecting numerous remand cases). Remanding this case for further proceedings solely because Dr. Hopfenbeck's report is "new" would "serve no useful purpose and would unnecessarily extend [plaintiff]'s long wait for benefits." *Benecke*, 379 F.3d at 595.

      C.    <u>The Evidence of Record Requires the ALJ to Find the Plaintiff Disabled During the Relevant Period</u>

Finally, the Court must determine whether the ALJ would be required to find the plaintiff disabled had she properly considered the opinions of Drs. Hellekson and Sanchez. *McCartey*, 298 F.3d at 1077. Noting the concessions of the Commissioner, and referencing the above-mentioned deficiencies in Dr. Gallagher's medical source report, the Court answers

this question in the affirmative.

Both doctors offering functional limitation assessments found that plaintiff would have the most extreme degree of limitation possible in dealing with co-workers and supervisors. Remand would add the report of Dr. Hopfenbeck, which strongly corroborates this conclusion. The VE addressed the precise work limitations established by the improperly discredited medical opinions and found that, given such limitations, the plaintiff would be entitled to benefits under the Act. AR at 355, 357. An award of benefits under these circumstances is appropriate. *See, e.g.*, *Benecke*, 379 F.3d at 595 (remanding for an immediate award of benefits "even though the vocational expert *did not* address the precise work limitations established by the improperly discredited testimony"). The Court finds that the opinions of Drs. Hellekson and Sanchez were erroneously rejected and should be credited over that of Dr. Gallagher. Those opinions, when coupled with the conclusions of the VE, the testimony of the plaintiff, and the balance of the record, establish that plaintiff is unable to perform his past relevant work or engage in other substantial gainful activity available in significant numbers in the national economy.

## VIII. CONCLUSION

Because the ALJ failed to provide legally sufficient reasons for rejecting the medical opinions of Dr. Hellekson and Dr. Sanchez and no outstanding issues must be resolved before a determination of disability can be made, and because the ALJ would be required to find the claimant disabled upon the evidence provided, this case should be REVERSED and REMANDED for an award of benefits for the period beginning September 20, 2003. A proposed order accompanies this report and recommendation.

DATED this 21st day of November, 2006.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge